**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sam Sobh,<br><br>    Plaintiff,<br><br>v.<br><br>Phoenix Graphix Incorporated, et al.,<br><br>    Defendants. | No. CV-18-04073-PHX-DWL<br><br>**ORDER** |

## INTRODUCTION

In this lawsuit, Plaintiff Sam Sobh sues his former employer, Phoenix Graphix Incorporated ("PGI"), as well as PGI's profit-sharing plan, president, and vice-president (collectively, "Defendants"). In a nutshell, Sobh contends that, after he was terminated, Defendants improperly rejected his request to "cash out" the benefits he was owed under the profit-sharing plan, failed to pay him the bonuses and paid time-off he'd earned prior to his termination, and failed to provide any documentation concerning these denials. Based on these allegations, Sobh asserts various claims under the Employee Retirement Income Security Act ("ERISA"), as well as state-laws claim for unlawful retention of wages and unjust enrichment.

Now pending before the Court is Defendants' motion to dismiss. (Doc. 12.)[1] For the following reasons, the motion will be granted.

---

[1] The parties requested oral argument, but the Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

**BACKGROUND**

I. <u>The Complaint</u>

The complaint (Doc. 1) contains the following factual allegations, which the Court accepts as true for the purpose of resolving Defendants' motion to dismiss:

Sobh is a former employee of PGI, an Arizona corporation. (*Id.* ¶¶ 13, 18.) PGI's president and vice-president are Brian and Anne Kotarski. (*Id.* ¶¶ 15-16.)

While employed by PGI, Sobh became a beneficiary of the PGI Profit Sharing Plan ("the Plan"). (*Id.* ¶ 20.) PGI later "terminated" Sobh's employment because their relationship had become "untenable." (*Id.* ¶¶ 5, 19.)

Following his termination, Sobh "requested that his benefits under [the Plan] be cashed out." (*Id.* ¶ 22.) This request "was denied" by an unspecified person or entity. (*Id.* ¶ 23.) Afterward, Sobh "requested the corresponding documentation regarding the reason for his denial, procedure for appeal, and supporting paperwork as required under [the Plan] and as required by ERISA," but this request "was refused" by an unspecified person or entity. (*Id.* ¶¶ 24-25.) Additionally, "PGI" refused to pay Sobh the "bonuses and paid time off" he had earned "prior to his termination." (*Id.* ¶ 31.)[2]

II. <u>The Plan Documents Subject To Judicial Notice</u>

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). However, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.*

Here, the complaint refers repeatedly to the Plan, the Plan is central to Sobh's ERISA-based claims, and Defendants have enclosed, as exhibits to their motion to dismiss, (1) the Plan (Doc. 12-1 at 2-57) and (2) the Summary Plan Description ("SPD") (Doc. 12-

---

[2] The complaint also alleges that PGI failed to provide Sobh with his 2017 premium rebate from a health insurance plan (Doc. 1 ¶¶ 33-36), but Sobh later withdrew any claims concerning this allegation (Doc. 15 at 7-8).

1 at 59-75). In his opposition, Sobh doesn't contest the authenticity of these documents. (Doc. 15.) Accordingly, the Court will consider them when ruling on Defendants' motion. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).[3] These documents reveal the following additional facts that are relevant to the Court's analysis:

The Plan designates "the Employer" as the Plan Administrator unless the board of directors designates a new Plan Administrator and the designation is accepted in writing. (Doc. 12-1 at 12 [Art. II § 2.22].) PGI is the default Plan Administrator, and Brian and Anne Kotarski are the named trustees. (Doc. 12-1 at 5, 55.) Under the Plan, a participant may receive benefits through, among other methods, a "Cash-Out"[4] or a "Hardship Distribution." (Doc. 12-1 at 30-31 [Art. VII §§ 7.1-7.1A.) A Cash-Out "shall be made as soon as administratively feasible in the Plan Year *following* the Plan Year of termination of employment . . . ." (Doc. 12-1 at 32 [Art. VII § 7.2].)[5]

In contrast, the Plan Administrator retains discretion to immediately disburse a

---

[3] In contrast, the Court declines to consider the assertion in Defendants' motion that "[o]n February 6, 2019, an actuary hired by [PGI] sent a letter to Mr. Sobh informing him that the necessary calculations were complete and that Mr. Sobh could request to cash out his plan account and have the balance distributed to him as soon as March 31, 2019. The letter included the necessary forms for Mr. Sobh to complete and return to the plan trustee. There was, in short, no need for Mr. Sobh to file this lawsuit in order to cash out his plan account. He simply needed to wait until the time when the plan documents allowed the distribution." (Doc. 12 at 5.) This assertion is not properly subject to judicial notice under *Marder*. Similarly, the Court declines to consider the new factual assertions that appear in Sobh's opposition brief (Doc. 15 at 2-3) but not the complaint itself. *Cf. Gerritsen v. Warner Bros. Entm't. Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) ("Courts regularly decline to consider declarations and exhibits submitted in . . . opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice.").

[4] The Plan offers both voluntary and involuntary "Cash-Outs." (Doc. 12-1 at 6 [Art. II § 2.5: "A 'Cash-Out' may be involuntary or voluntary."].) "A voluntary Cash-Out is a distribution of Accrued Benefits to a former Participant which meets the following requirements: (i) the former Participant has voluntarily elected to receive the distribution, and (ii) the distribution is made on account of the Employee's termination of participation in the Plan and no later than the end of the first Plan Year following such termination." (*Id.*) In contrast, involuntary Cash-Outs are issued only if, among other things, the "Accrued Benefit" value does not exceed $3,500 for plans beginning before August 6, 1997, or $5,000 for plans beginning after August 5, 1997. (*Id.*) Although the complaint does not expressly state whether the "Cash-Out" sought by Sobh was voluntary or involuntary, the facts alleged in the complaint make clear it was voluntary.

[5] "A 'Plan Year' is the period from the first day of January to the last day of December, annually." (Doc. 12-1 at 12 [Art. II § 2.23].)

Hardship Distribution if the participant demonstrates "immediate and heavy financial need" and the distribution is "necessary" to satisfy that need. (Doc. 12-1 at 30-31 [Art. VII § 7.1A].) However, the Plan imposes various limitations on Hardship Distributions. Among other things, (1) such a distribution must be limited to the precise amount required to alleviate the hardship and (2) "financial hardship" is limited to medical expenses, purchase of a principal residence, payment of tuition or other educational fees, rent or mortgage payments necessary to prevent eviction or foreclosure, and "such other financial needs as prescribed by the Commissioner of the Internal Revenue Service." (*Id.*) Additionally, the Plan Administrator's hardship determination is "final and binding." (*Id.*)

## LEGAL STANDARD

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

## ANALYSIS

I. <u>ERISA Claims</u>

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983) (citations omitted). Any plan "established or maintained by an employer" is defined as an employee welfare benefit plan under ERISA to the extent it "was established or is maintained for the purpose of providing for its participants or their beneficiaries . . .

medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1).

A. **Count One**

In Count One, Sobh asserts a claim under § 502(a)(1)(B) of ERISA for "Improper Denial of Plan Benefit." (Doc. 1 at 4.)

Defendants argue Count One should be dismissed because Sobh filed suit prematurely: he made his Cash-Out request in 2018, then filed suit in November 2018, yet the Plan specifically provides that Cash-Out distributions need not be made until the year *after* the year of termination (*i.e.,* in 2019). (Doc. 12 at 3-5.) In response, Sobh doesn't dispute that, under the Plan, Cash-Out requests aren't due until the following year—instead, he contends his request was actually for a Hardship Distribution, which should have been honored immediately. (Doc. 15 at 2 ["Plaintiff requested to cash out his benefits under the Plan but this cashout distribution was not under section 7.2 of the Plan, it was in the form of a hardship distribution under section 7.1A . . . ."].)

Sobh's argument lacks merit. The complaint alleges that Sobh sought a Cash-Out under section 7.2 of the Plan. Indeed, it specifically alleges that Sobh "requested that his benefits . . . be *cashed out*" (Doc. 1 ¶ 22, emphasis added) and doesn't make any mention of a request for a Hardship Distribution. A plaintiff cannot avoid dismissal at the Rule 12(b)(6) stage by attempting to articulate an entirely new theory of liability in his motion papers that doesn't appear in the complaint itself. *See, e.g., Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[F]actual allegations made in a brief opposing a motion to dismiss . . . most certainly may not be considered when the facts they contain contradict those alleged in the complaint."); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. . . . [C]onsideration of a motion to dismiss is limited to the pleadings.") (citations omitted).

The Court further notes that, even if Sobh had specifically alleged in the complaint that he was entitled to, and requested, a Hardship Distribution, he does not allege any *facts*

1 indicating conditions of financial hardship—much less one of the qualifying hardships specified in the Plan. *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). For these reasons, the Court dismisses Count One.

B. **Count Two**

In Count Two, Sobh asserts a claim under § 503 of ERISA to recover "damages" based upon Defendants' failure to provide reasons for denying his claim for benefits. (Doc. 1 at 4-5.)

Defendants argue Count Two fails because § 503 does not provide a private right of action for damages. (Doc. 12 at 5-6.) In support of this argument, Defendants cite *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985), and *Syed v. Hercules Inc.*, 214 F.3d 155 (3d Cir. 2000), as well as two district court decisions rejecting damage claims premised on § 503 violations. (Doc. 12 at 5-6.) In response, Sobh argues that (1) *Russell* is distinguishable because it merely held "there is no private cause of action under ERISA § 409A, and does not address or consider a cause of action under § 503," (2) although *Syed* held that the remedy for a § 503 violation was a remand to the plan administrator, such a remand is unnecessary when (as in this case) the plan administrator has clearly abused its discretion, and (3) the district court cases cited by Defendants are from another circuit and "create no precedent in this current case." (Doc. 15 at 4-5.)

The Court agrees with Defendants. Although the precise issue presented in *Russell* was whether the plaintiff could seek damages premised on a violation of § 409 of ERISA, the Supreme Court's reasoning for rejecting that claim applies equally to a damage claim under § 503: "The statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan—§ 502(a)(1)(B)—says nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim." 473 U.S. at 144 (citation omitted). Thus, the Court concluded, "[t]he six carefully integrated civil enforcement provisions found in § 502(a) of the statute . . . provide strong evidence that Congress did *not* intend to authorize

other remedies that it simply forgot to incorporate expressly." *Id.* at 146.[6]

The provision on which Sobh seeks to rely here, § 503, is similar to § 409 in that it simply creates certain procedural rights and does not state that a violation of one of those procedural rights may give rise to a claim for damages. *See* 29 U.S.C. § 1133. Accordingly, Sobh cannot assert a claim for "damages," separate and apart from any benefits owed to him under Plan, based on Defendants' alleged violations of § 503. *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1009 (9th Cir. 1998) ("Extracontractual, compensatory and punitive damages are not available under ERISA."). *See also Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, 2016 WL 4499551, *11 (D.N.J. 2016) ("[N]either Section 503 of ERISA nor its accompanying regulation gives rise to a private cause of action.") (citations omitted). Therefore, the Court dismisses Count Two.

C. **Count Three**

In Count Three, Sobh asserts a claim under § 510 of ERISA for "Improper Discrimination." (Doc. 1 at 5.) Specifically, Sobh alleges that Defendants discriminated against him "for attempting to exercise his rights under the . . . Plan" and that the discrimination took the form of "the denial of benefits." (*Id.* ¶¶ 55-56.)

Defendants argue Count Three fails because § 510 is meant to apply when an employee suffers an adverse employment action due to engaging in ERISA-related protected activity, yet here the complaint alleges that Sobh didn't make his first ERISA-related request until after he was terminated. (Doc. 21 at 7-9.) Defendants conclude that "a denial of plan benefits is not the kind of adverse employment action that is necessary in order to bring a claim under Section 510 of ERISA." (*Id.*) In response, Sobh argues that § 510 encompasses two different types of claims, discrimination and retaliation, and he isn't asserting a retaliation claim here—instead, his theory is that "the decision to deny [the Cash-Out request] or refuse to acknowledge [it] was motivated by bad faith due to the circumstances surrounding [my] departure. . . . While [I] did not suffer an adverse

---

[6] Section 502 has since been amended to include other civil enforcement provisions, but none of them allow a participant or beneficiary to recover extracontractual or consequential damages.

employment action from [my] attempt to exercise [my] benefits, it appears, Defendants chose to discriminate against [me] in administering the benefits of the Plan because of [my] adverse employment action." (Doc. 15 at 5-7.)

Defendants' motion to dismiss Count Three will be granted. Section 510 of ERISA provides: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . ." 29 U.S.C. § 1140. Accordingly, claims under § 510 usually arise from two scenarios: (1) where an employer terminates a plan participant just before the participant's benefits vest,[7] or (2) where an employer discriminates or retaliates against a plan participant for protesting a legal violation in connection with an ERISA plan.[8]

Here, Sobh doesn't argue he was terminated because he requested his benefits under the Plan or because his benefits were about to vest. Rather, he accuses Defendants of denying his Cash-Out request due to his termination. But § 510 doesn't function this way. Sobh must point to some ERISA-related conduct that motivated Defendants to take an adverse employment action against him, not the other way around. Thus, the Court

---

[7] *See, e.g., Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990) ("By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits."); *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990) ("Section 510 prevents an employer from arbitrarily discharging an employee whose pension rights are about to vest. A claimant must show that employment was terminated because of a specific intent to interfere with ERISA rights in order to prevail under § 510; no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination.") (citations omitted).

[8] *See, e.g., Teutscher v. Woodson*, 835 F.3d 936, 940 (9th Cir. 2016) ("To establish a claim of retaliation under section 510, Teutscher . . . had to show that: (1) he engaged in an activity protected under ERISA, (2) he suffered an adverse employment action, and (3) a causal link existed between his protected activity and [the] adverse action. One such ERISA-protected activity is protesting a legal violation in connection with an ERISA-governed plan.") (citation omitted); *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 880-81 (9th Cir. 1989) ("Section 510 of ERISA prohibits an employer from taking any adverse employment action against an employee 'for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . .' Generally speaking, an '[u]nlawful reprisal occurs when (1) an employee participates in a statutorily protected activity, (2) an adverse employment action is taken against him or her, and (3) a causal connection existed between the two.' This general reprisal standard clearly applies in the ERISA context.") (citations omitted).

1 | dismisses Count Three.

### D. **Count Four**

In Count Four, Sobh asserts a claim for "declaratory relief confirming his rights under the . . . Plan." (Doc. 1 ¶ 62.) Defendants move to dismiss Count Four because it "appears to depend upon Count One's claim for alleged wrongful denial of benefits" and "[b]ecause Count One fails to state a claim, Count Four fails as well." (Doc. 12 at 9.) In response, Sobh doesn't dispute that the validity of Count Four depends on the validity of Count One but argues that Count One should survive dismissal under his improper-denial-of-Hardship-Distribution theory. (Doc. 15 at 7.)

The Court has already concluded that Count One does not state a valid claim because the complaint does not mention (let alone allege facts supporting an entitlement to) a Hardship Distribution. Because the parties don't dispute that Count Four is dependent on Count One, Count Four also must be dismissed.

## II. State-Law Claims

### A. **Counts Five And Seven**

In Counts Five and Seven, Sobh asserts claims for unjust enrichment. (Doc. 1 at 6-7.) Defendants have moved to dismiss these claims on various grounds, including preemption. (Doc. 12 at 9-11, 12-14.) In response, Sobh "seeks leave to amend the Complaint to remove [his] claim[s] for Unjust Enrichment." (Doc. 15 at 7, 8.)

Because the Court is dismissing all remaining claims, and Sobh only seeks leave to amend for the purpose of removing these claims, the Court will dismiss Counts Five and Seven.

### B. **Count Six**

In Count Six, Sobh asserts a state-law claim for "Improperly Retained Wages" under A.R.S. § 23-350. (Doc. 1 at 6.)

Defendants argue the Court should dismiss Count Six because "the ERISA claims in the Complaint . . . fail to state a claim" and "[w]ith all federal claims removed at this very early state of litigation, the Court should . . . decline to exercise supplemental

jurisdiction over the remaining state-law claims." (Doc. 12 at 11-12.) In response, Sobh argues that he has, in fact, asserted "justiciable federal-question claims," so supplemental jurisdiction over Count Six remains appropriate. (Doc. 15 at 7.)

In most instances, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [pendent state-law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."). Here, the *Cohill* factors weigh against retaining jurisdiction over Count Six. First, because the case is only months old and no trial date has been set, there will be minimal duplication of effort caused by dismissal. Second, it appears the Maricopa County Superior Court would be at least as convenient a forum as this Court. The parties and their counsel are all based in and around Phoenix. (Doc. 1 ¶¶ 12-16.) Third, it would not be unfair to require Sobh, a Maricopa County resident, to pursue a state-law wage claim in the Maricopa County Superior Court. And fourth, considerations of federalism and comity are best served by allowing the Arizona state courts to address state-law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *see also Roundtree v. Atl. Dev. & Inv.,* 2009 WL 2132697, *1-3 (D. Ariz. 2009) (dismissing federal claim and then declining to exercise supplemental jurisdiction over remaining state-law claims: "The Court is mindful that the exercise of supplemental jurisdiction may serve the values of judicial economy and convenience . . . but these values are outweighed by the interests of comity and federalism."); *Floyd v. Watkins*, 2015 WL 5056036, *6 (D. Or. 2015) ("The Court closely examined the sole federal law claim [under § 1983] and resolved it in favor of Officer Watkins. State court is a convenient forum for the parties, and declining to exercise

1 supplemental jurisdiction respects the values of federalism and comity."). Thus, the Court
2 dismissed Count Six.

### III. Claims Against Brian and Anne Kotarski

Defendants argue that, although the complaint names Brian and Anne Kotarski as individual defendants, it "does not actually specify which of the seven claims are against the Kotarskis," inaccurately alleges that one of the Kotarskis is the plan administrator (even though the Plan itself specifies that PGI is the administrator), and does not contain any factual allegations "of any personal wrongdoing by either of them." (Doc. 12 at 14.) Thus, Defendants contend that "if the Court allows any claim in this case to proceed, it should be against only [PGI] and the Plan. The Court should dismiss all claims against the Kotarskis individually." (*Id.*) In response, Sobh asserts that, because Brian and Anne Kotarski serve as trustees and fiduciaries of the Plan, they are "liable because they exercise discretionary authority or control with respect to the management of the Plan, and exercise control respecting the management or disposition of Plan assets." (Doc. 15 at 8.) Sobh further argues that the Kotarskis "appear" to be the people who "actually made the decisions to deny benefits, failed to provide the reasons for the denial, and discriminated against Plaintiff . . . ." (*Id.*)

Although it is arguably unnecessary to reach this issue in light of the dismissal, on other grounds, of all of the counts in the complaint, Defendants are correct that the claims against Brian and Anne Kotarski are unavailing. The complaint is devoid of any factual allegations concerning their personal involvement in the conduct at issue. Sobh cannot cure this infirmity by attempting to sneak a new factual allegation—that the Kotarskis "appear" to be the individuals responsible for the challenged conduct—into his response to the motion to dismiss. *Henthorn,* 29 F.3d at 688; *Car Carriers,* 745 F.2d at 1107.

### IV. Leave To Amend

In the final paragraph of his opposition brief, Sobh states: "Should this Court determine that the allegations regarding the acts of Defendants were not adequately pled, Plaintiff seeks leave of the Court to amend the pleading to more fully allege the allegations

of wrongdoing against the Defendants." (Doc. 15 at 9.)

"Rule 15 advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, the Court shouldn't deny leave to amend unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Defendants don't argue that any of those circumstances are present here. Nor do Defendants ask the Court to dismiss any of Sobh's claims with prejudice. Thus, to the extent Sobh wishes to attempt to revive some or all of the claims that were dismissed in this Order, he is granted leave to do so.

***

Accordingly, **IT IS ORDERED** that:

(1) Defendants' motion to dismiss (Doc. 12) is **granted**;

(2) Sobh may file an amended complaint, in compliance with Local Rule 15.1(b), by September 13, 2019; and

(3) If an amended complaint is not filed by **September 13, 2019**, the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 22nd day of August, 2019.

_____
Dominic W. Lanza
United States District Judge